IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LORRAINE TERCERO and
SANDRA HERNANDEZ,**

        **Plaintiffs,**

        vs.                                                                           CIV. No. 98-180 JP/WWD

**CITY OF ROSWELL, NEW MEXICO,
and ROSWELL CITY MANAGER JOHN CAPPS,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

On February 12, 1998, Plaintiffs filed their "Complaint for Damages for Violations of Civil Rights" ("Complaint"), naming as defendants former state judge Richard Hoover, the City of Roswell, and Roswell City Manager John Capps. On May 6 and May 12, 1998, Defendants filed motions to dismiss under Rule 12(b)(6). In a Memorandum Opinion and Order entered July 13, 1998, I dismissed Plaintiffs' claims against Defendant Hoover with prejudice, finding that Plaintiffs had failed to allege adequate facts showing that Defendant Hoover was acting under color of law for the purposes of 42 U.S.C. § 1983. I dismissed Plaintiffs' claims against the City and Defendant Capps without prejudice, giving Plaintiffs leave to amend their Complaint. I also denied the Plaintiffs' motion for summary judgment based on collateral estoppel. On July 30, 1998, Plaintiffs filed their Amended Complaint, which shed some new light on their claims against Defendant Hoover, as well as against the other Defendants.

On September 1, 1998 Plaintiffs filed their "Motion for Immediate Appeal Pursuant to

FED. R. CIV. P. 54(b) and 28 U.S.C. § 1292(b)" [Doc. No. 30]. Plaintiffs seek immediate appeal of the dismissal of their claims against Defendant Hoover as well as my denial of their motion for summary judgment. Plaintiffs request that I enter a final judgment as to Defendant Hoover under Rule 54(b) or, in the alternative, that I amend my Memorandum Opinion and Order so that it is subject to interlocutory appeal under 28 U.S.C. 1292(b).

On September 14, 1998, Defendants City of Roswell and John Capps filed a second motion to dismiss under Rule 12(b)(6). [Doc. No. 36]. Defendants contend that the Amended Complaint does not cure the failings of the original Complaint and therefore ask me to dismiss Plaintiffs' claims with prejudice.

For the reasons set forth below, the July 13, 1998 Memorandum Opinion and Order should be withdrawn and replaced by this Memorandum Opinion and Order, and both pending motions should be denied as moot.

**Plaintiffs' Motion for Partial Summary Judgment**

As I stated in the July 13, 1998 Memorandum Opinion and Order, there are no *legal* issues in this case to which the doctrine of collateral estoppel applies because the New Mexico Judicial Standards Commission did not address whether Hoover acted under color of law or whether his conduct supports a claim for punitive damages. The Commission did make various *factual* findings. Several of these factual findings, such as those regarding Hoover's behavior toward the litigants who appeared before him, are of no relevance to Plaintiffs' claims. However, to the extent that any of the findings of fact made by the Commission are relevant to Plaintiffs' claims, the doctrine of collateral estoppel applies and Defendant Hoover may not relitigate those facts in this case.

2

**Defendant's Hoover's Motion to Dismiss**

In the July 13, 1998 Memorandum Opinion and Order, I stated that Plaintiffs' claims against Defendant Hoover should be dismissed because Plaintiffs failed to plead sufficient facts to show that Hoover was acting "under color of law" for the purposes of 42 U.S.C. § 1983.

"[T]he purpose of Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, 112 S.Ct. 1827, 1830 (1992). "The traditional definition of acting under color of state law requires that the defendant in a Section 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043 (1941)). In the public employment context, the Supreme Court has noted that "state employment is generally sufficient to render the defendant a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 935-36 n. 18, 102 S.Ct. 2744, 2752-53 n. 18 (1982). But at the same time, it is "well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995).

Lugar can be understood as a recognition that an individual employed by the state who violates another individual's federal rights will "generally" (i.e., in most cases) do so by virtue of the authority vested in him under state law. See Lugar, 457 U.S. at 935-36 n. 18, 102 S.Ct. at 2752-53 n. 18. Many tortious acts committed by state employees will occur in the performance of the employee's official duties, and regardless of whether the employee "hew[s] to the line of

3

their authority or overstep[s] it." Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040 (1945) (plurality opinion of Douglas, J.). However, before conduct may be fairly attributed to the state because it constitutes action "under color of state law," there must be "a real nexus" between the defendant's use or misuse of his authority as a public employee, and the violation allegedly committed by the defendant. See D.T. by M.T. v. Independent Sch. Dist. No. 16, 894 F.2d 1176, 1188 (10th Cir. 1990); Barna v. City of Perth Amboy, 42 F.3d 809, 817 (3d Cir. 1994) (collecting cases); Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir. 1994) (collecting cases). Such an interpretation is entirely consistent with the Supreme Court's pronouncement that Section 1983 is only intended to deter state officials from "using the badge of their authority" to deny citizens their federally protected rights. Wyatt, 504 U.S. at 161, 112 S.Ct. at 1830. Therefore, it is the plaintiff's burden to plead, and ultimately establish, the existence of "a real nexus" between the defendant's conduct and the defendant's "badge" of state authority in order to demonstrate action was taken "under color of state law."

Plaintiffs' factual allegations regarding the existence of "a real nexus" are not particularly strong. However, by a combination of the allegations in their original Complaint and the Amended Complaint, Plaintiffs have pled sufficient facts to support their contention that Hoover was a state actor under Section 1983. Plaintiffs asserted that Hoover brought fliers advertising a religious revival to the courthouse, that on more than one occasion Hoover "announced to the court staff that everyone should go to the revival," and that "Hoover was adamant that court staff should attend the revival." Hoover also placed a picture of Jesus in the file room that the public had to walk through in order to reach his chambers. These allegations support the inferences that Hoover used his authority as a judge and as a public employee to try to force Plaintiffs to attend a

4

religious gathering and to hang a religious symbol in the courthouse. By putting pressure on court employees who are under his supervisory authority (and who essentially work for him) to attend the revival, Hoover used the power and prestige of his office. This created a nexus between Hoover's position as a judge and his ability to influence the court employees to attend a religious event that would not have existed had the same announcements been made by some other member of the court staff who was not a judicial officer. Consequently, Plaintiff's claims against Hoover should not be dismissed for failure to adequately allege that Hoover acted under color of law.

Because I stated in the July 13, 1998 Memorandum Opinion and Order that Plaintiff had pled insufficient facts in support of their claim that Hoover acted under color of law, I did not address Defendant Hoover's contention that Plaintiffs failed to show that his actions violated the Establishment Clause of the First Amendment. In order to state a claim for violation of the First Amendment's Establishment Clause, the Plaintiffs must demonstrate that Hoover's insistence on attendance at the revival and his decision to hang the picture of Jesus either (1) had the purpose or effect of endorsing religion; or (2) created an excessive entanglement between the state and religion. Bauchman v. West High School, 132 F.3d 542 (10th Cir. 1997). An action has the effect of endorsing religion if a reasonable observer would believe that the behavior promoted religious beliefs. See County of Allegheny v. ACLU, 492 U.S. 573, 620, 109 S.Ct. 3086, 3115 (1989). In this case, Hoover's repeated insistence that Plaintiffs attend a religious revival, particularly when coupled with the hanging of the picture, would lead a reasonable observer would believe that the behavior promoted religious beliefs and therefore has the effect of endorsing religion. Consequently, Plaintiffs have successfully pled an Establishment Clause claim

against Hoover and that claim should not be dismissed.

Similarly, in the July 13, 1998 Memorandum Opinion and Order I did not reach Defendant Hoover's argument that Plaintiffs' free speech claim under Section 1983 must fail because their speech did not touch upon a matter of public concern. However, in the portion of the opinion dealing with Plaintiffs' claims against Defendants City of Roswell and City Manager John Capps, I did state that Plaintiffs speech touched upon a matter of public concern because it disclosed alleged malfeasance by city officials. Conaway v. Smith, 853 F.2d 789, 795 (10th Cir. 1988). Consequently, Plaintiffs' free speech claim against Defendant Hoover also should not be dismissed.

**Defendants City of Roswell and City Manager John Capps' Motion to Dismiss**

In the July 13, 1998 Memorandum Opinion and Order, I stated that it was undisputed that Defendant Capps was acting under color of law when he required Plaintiffs to attend "Christian counseling." With respect to Plaintiffs' free speech claim, I stated that Plaintiffs' speech did involve a matter of public concern but that they failed to allege sufficient facts to show that Capps' decision to require them to attend "Christian counseling" was in retaliation for their protected speech. However, the facts as alleged by Plaintiffs in the original Complaint and the Amended Complaint, when read together, do support Plaintiffs' claim that Capps retaliated against them for their speech. Consequently, the free speech claim against Capps and the City should not be dismissed.

With respect to the Establishment Clause claim against the City and Capps, I stated in the earlier Memorandum Opinion and Order that Plaintiffs failed to allege sufficient facts to support a

6

claim that the "Christian counseling" that Capps ordered Plaintiffs to attend (1) had the purpose or effect of endorsing religion; or (2) created an excessive entanglement between the state and religion. I then dismissed these claims without prejudice and granted Plaintiffs leave to amend their complaint.

Plaintiffs again alleged in their Amended Complaint that Defendant Capps required them to attend "Christian counseling" at Christian Professional Counseling Services, Inc. Plaintiffs do not allege that the content of the counseling was religious. Presumably, an organization with a denominational title—e.g., Christian Professional Counseling Services, Islamic Professional Counseling Services, Buddhist Professional Counseling Services, or Jewish Professional Counseling Services—could provide what are, in essence, secular counseling services. This Establishment Clause claim, as alleged, is very weak, but should not be dismissed on a Rule 12(b)(6) motion. However, if Plaintiffs are unable to come forward with admissible evidence that the counseling they received included religious content, this claim may be dismissed on a Rule 56 motion for summary judgment. The Plaintiff's claim under the Establishment Clause should not be dismissed at this point.

In conclusion, none of Plaintiffs' claims should be dismissed at this stage in the case, and therefore both Plaintiffs' "Motion for Immediate Appeal Pursuant to FED. R. CIV. P. 54(b) and 28 U.S.C. § 1292(b)" and Defendants City of Roswell and John Capps' motion to dismiss should be denied. While some of Plaintiffs' claims may not be particularly hearty, it would be more appropriate to make such a determination in the context of a motion for summary judgment rather than in a Rule 12(b)(6) motion to dismiss for failure to state a claim.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiffs' "Motion for Immediate Appeal Pursuant to FED. R. CIV. P. 54(b) and 28 U.S.C. § 1292(b)" [Doc. No. 30] is DENIED as moot;

(2) Defendants City of Roswell and John Capps' second motion to dismiss [Doc. No. 36] is DENIED;

(3) The Memorandum Opinion and Order entered July 13, 1998 is VACATED and replaced by this Memorandum Opinion and Order;

(4) Plaintiffs' Motion for Partial Summary Judgment on Grounds of Collateral Estoppel" [Doc. No. 16] is DENIED IN PART and GRANTED IN PART as explained above;

(5) Defendant Hoover's motion to dismiss [Doc. No. 12] is DENIED; and

(6) Defendants City of Roswell and City Manager John Capps' original motion to dismiss [Doc. No. 8] is DENIED.

_____
**UNITED STATES DISTRICT JUDGE**